## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID BIERI,** | : | **Civil No.  3:23-CV-1919** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARTIN O'MALLEY,** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

We are now called upon to write the next chapter in this longstanding Social Security disability case. In this case, all parties agree that the current ALJ decision is flawed and must be set aside. Specifically, the Commissioner concedes error in this latest ALJ decision, but citing the deference owed to administrative agency determinations, requests that we remand this case for what would be a third ALJ hearing of Bieri's disability claim. Bieri urges us to follow a different path, one

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

which places a greater value on finality than upon administrative agency deference and exercise our legal authority to award benefits in this case.

Upon careful consideration of the parties' competing positions, while we regard this as an exceedingly close case, we conclude that the Commissioner should be afforded one final opportunity to fully develop and analyze this complex administrative and medical record. Therefore, the motion to remand will be granted.

## II.    <u>Statement of Facts and of the Case</u>

This case began some seven years ago, on April 27, 2017, when David Bieri filed an application for disability benefits under Title II of the Social Security Act, alleging that he had become disabled in October of 2016, following a catastrophic motor vehicle accident which took place in February of 2015. (Tr. 15). Following initial agency proceedings, an Administrative Law Judge (ALJ) denied this claim on January 30, 2019, finding that Bieri could perform a limited range of sedentary work. (Tr. 15-29).

On June 17, 2020, Bieri appealed this decision to the district court. <u>Bieri v. Saul</u>, 1:20-CV-983 (Doc. 1). On appeal, Bieri's primary claim was that the ALJ's Step 3 analysis of his disability claim was flawed. <u>Bieri v. Saul</u>, 1:20-CV-983 (Doc. 17). Following receipt of Bieri's opening brief in this initial appeal, the Commissioner filled an unopposed motion to remand this case, which recited that:

> The agency has further reviewed Plaintiff's case and determined that remand for further proceedings is warranted. On remand, the Appeals Council will direct the administrative law judge (ALJ) to offer Plaintiff the opportunity for a new hearing, further consider whether Plaintiff's impairments meet or equal any listed impairment, further assess the residual functional capacity, obtain vocational expert evidence as warranted, and issue a new decision.

Bieri v. Saul, 1:20-CV-983 (Doc. 22).

We granted this motion and on January 27, 2022, and this case was remanded for the purpose of affording the plaintiff the opportunity to further develop his disability claim. Bieri v. Saul, 1:20-CV-983 (Docs. 23, 24).

Following this remand order, the Social Security Appeals Council provided the following additional direction to the ALJ regarding the necessity of a further hearing, finding, in part, that:

> ●At step 3, the hearing decision did not sufficiently address evidence suggesting the claimant's lumbar spine impairment may have met or medically equaled Listing 1.04. The decision found the claimant's severe impairments included lumbosacral radiculitis, as well as osteoarthritis of the knee, cervical radiculopathy, peripheral nerve disease, and obesity (Dec., p.4). At the time the decision was issued, disorders of the spine were to be considered under Listing 1.04. The decision considered Listing 1.02, which addressed the knee impairment, and Listing 11.14, which addressed peripheral nerve disease, but did not consider whether the claimant's lumbar spine impairment (or cervical spine impairment) met or medically equaled Listing 1.04. The record contained evidence relevant to this evaluation, such as pain management records (Ex. 14F, p.4), a report discussing a lumbar MRI (Ex. 18F, p.44-45), and an evaluation by an orthopedist (Ex. 21F, p.29). Remand is warranted for consideration of the claimant's lumbar spine impairment under Listing 1.15 (effective April

3

2, 2021), and for consideration of whether the claimant's cervical spine impairment and other severe impairments, singularly or in combination, meet or medically equal any of the listed impairments.

● The hearing decision did not provide sufficient rationale regarding the claimant's mental impairments and resulting limitations. The decision found the claimant's medically determinable impairments of anxiety state, and post-concussion syndrome, were nonsevere (Dec., p.4, para 10). In making this finding, the decision assessed mild limitations in all four areas of the 'B criteria' (Dec., p.4-5). When assessing the residual functional capacity (RFC), all of the claimant's medically determinable impairments are to be considered, including those that are not severe (20 CFR 404.1545(a)(2)). The RFC did not contain any mental limitations and, at step 5, the claimant was found capable of performing representative occupations at the skilled, SVP 8 level: Director of Educational Programs (DOT# 099.117-010) and Educational Supervisor in Correctional Institution (DOT# 099.117-014) (Dec., p.13). Remand is warranted because the decision did not explain how the claimant's nonsevere mental impairments were considered in assessing the RFC.

Upon remand the Administrative Law Judge will:

● Based on the current evidence of record, further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

● At step 3, consider whether any of the claimant's severe impairments, singularly or in combination, meet or medically equal any of the listed impairments.

● Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

4

● If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14, 85-15 and 96-9p), and to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 3057-3059). Thus, it is clear that the Appeals Council contemplated a proceeding in which Bieri would be provided a full and fulsome opportunity to further develop the record and argue his claim that he was *per se* disabled at Step 3 of the administrative process due to the severity of his impairments. In addition, the remand instructions clearly anticipated eliciting further vocational expert testimony.

Through a series of missteps, mishaps, and mistakes which are not exclusively attributable to any specific party, this full opportunity was not afforded to Bieri at his second disability hearing. As Bieri's current counsel explains:

5

Beginning on May 30, 2022, the office of Mr. Bieri's [prior] counsel was relocated. Prior to the office move, counsel updated her mailing address through the online Appointed Representative Services platform. Thereafter, on June 15, 2022, counsel directly notified ALJ Balutis by facsimile and regular mail that her address had changed and notices regarding Mr. Bieri's claim should be sent to her new address. (R. 3128-3129).

Unbeknownst to [prior] counsel, an initial written notice dated May 25, 2022 had already been issued scheduling Mr. Bieri's remand hearing for August 9, 2022 at 9:30 a.m. (R. 3108). The initial notice and multiple administrative mailings, addressed to counsel's prior address, were ultimately returned as "undeliverable." See Doc. 14-1. Notwithstanding paper and electronic notice of counsel's new address, a subsequent July 12, 2022 notice of hearing reminder was also sent to counsel's prior address and never received (R. 3134-3135).

On or about August 1, 2022, [prior] counsel learned of Mr. Bieri's remand hearing scheduled for August 9, 2022. The remand hearing presented a scheduling conflict for counsel as she was already attached for an evidentiary hearing in Philadelphia County at 9:00a.m. on August 9, 2022. Based upon counsel's prior interactions with ALJ Balutis, counsel elected to first seek continuance and/or delayed start of the evidentiary hearing to accommodate Mr. Bieri's remand hearing. To that end, [prior] counsel submitted requisite COVID-19 Remote Hearing consents on August 1, 2022 (R. 3132-3133).

However, [prior] counsel's request to continue or delay the evidentiary hearing was opposed and ultimately denied on August 3, 2022. Mr. Bieri therefore formally requested a change in the date/time of his remand hearing based upon his counsel's unavailability (R. 3140), and counsel further explained:

> Prior to remand in this matter, our law offices relocated (for the first time in more than fifty years) from 507 Linden Street in Scranton, Pennsylvania to 538 Biden Street in Scranton, Pennsylvania. I updated my contact information online through Appointed Representative

> Services, believing the update would apply to my existing
> cases. However, I did not receive notice of Mr. Bieri's
> scheduled hearing as it was sent to my prior address. Mr.
> Bieri, who suffers from memory deficits, only recently
> informed me of the scheduled hearing date. Unfortunately,
> I am attached in another matter on August 9, 2022, and my
> attempts to reschedule the same have been unsuccessful.
> (R. 3140-3141).

(Doc. 14 at 7-8).

Ultimately, the ALJ denied this tardy continuance request, which was made

months after the scheduling of this hearing and days before the hearing was set to

proceed. Bieri's prior counsel then withdrew from the case on the eve of the hearing

and new counsel accepted an appointment in this matter on August 8, 2022, the day

before the scheduled hearing. (Tr. 3142).

A second, albeit brief and truncated hearing took place on August 9, 2022.

(Tr. 3016-3020). Given current counsel's appointment to the case on August 8, the

day before the scheduled hearing, counsel presented no additional evidence or

argument in support of Bieri's claim. (Id.)  Thus, the additional legal and factual

development which was expressly contemplated by the remand order simply did not

take place.

On December 5, 2022, the ALJ issued a second decision denying Bieri's

disability claim. (Tr. 2990-3009). In this decision the ALJ found at Step 1 that Bieri

met the insured requirements of the Act through December 2016. (Tr. 2996). At Step

2 of the sequential analysis which governs Social Security appeals, the ALJ concluded that Bieri suffered from the following severe impairments: Osteoarthritis of the Knee; Degenerative Disc Disease of the Cervical Spine with Radiculopathy; Degenerative Disc Disease of the Lumbar Spine with Lumbar Radiculitis; Peripheral Nerve Disease; and Obesity. (Tr. 2997).

At Step 3 the ALJ addressed the question of whether any of these impairments were *per se* disabling, an issue which dominates this appeal and was the focus of Bieri's first district court appeal. After an extensive and fact-bound analysis, the ALJ concluded that Bieri had not shown disability at Step 3 of this sequential analysis observing instead that:

> The undersigned has considered the claimant's Osteoarthritis of the Knee in relation to Impairment Listing 1.18, which involves an abnormality of a major joint in any extremity with: (A) chronic joint pain or stiffness; (B) abnormal motion, instability, or mobility of the affected joints; (C) anatomical abnormality of the affected joints noted on physical examination or imaging; AND (D) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least twelve months, and medical documentation of a medical need for a walker/ bilateral canes or crutches/ a wheeled and seated mobility device involving the use of both hands, an inability to use one upper extremity to complete work-related activities and a documented medical need for a one-handed hand-held assistive device requiring the use of the other upper extremity or a wheeled and seated device involving the use of one hand, or an inability to use both upper extremities to the extent that neither can be used to complete work-related activities involving fine and gross movements. Regardless of whether the claimant's Osteoarthritis of the Knee meets the A, B, and C criteria of this Listing, this listing is not

8

met or medically equaled as the D criteria of this Listing is not met or medically equaled, and therefore, because all four criteria of Listing 1.18 are not met, this listing is not met or medically equaled. While the claimant used some assistive devices during the relevant time period, the evidence does not indicate that the claimant has an inability to use one upper extremity to complete work-related activities using fine and gross movements nor does it provide evidence of any inability to use both upper extremities to the extent that neither can be used to complete work-related activities involving fine and gross movements. As such, the undersigned finds that the claimant's Osteoarthritis of the Knee does not, alone or in combination, meet or medically equal Listing 1.18.

The undersigned has considered the claimant's Cervical Radiculopathy and Lumbar Radiculitis in relation to Impairment Listings 1.15 and 1.16. Notably, while the Appeals Council remand order directs the undersigned to consider these impairments under Listing 1.04, effective April 2021, for all decisions rendered thereafter, spinal impairments are no longer evaluated under 1.04, which has been replaced with Listings 1.15 and 1.16. Therefore, these are the Listings under which the claimant's spinal impairments will be evaluated. Impairment Listing 1.15 addresses disorders of the skeletal spine resulting in compromise of a nerve root with the following four criteria present: (A) pain, paresthesia, and muscle fatigue; (B) radicular distribution of neurological signs present during physical examination or on a diagnostic test evidence by either muscle weakness, signs of nerve root irritation or tension or compression consistent with compromise of the affected nerve root, sensory changes evidenced by decreased sensation or sensory nerve deficits on electrodiagnostic testing, or decreased deep tendon reflexes; (C) findings on imaging consistent with compromise of a nerve root in the cervical or lumbosacral spine; AND (D) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least twelve months with medical documentation of a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands, an inability to use one upper extremity to complete work-related activities involving fine and gross movements and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other

upper extremity or a wheeled and seated mobility device involving the use of one hand, or an inability to use both upper extremities to the extent that neither can be used to complete work-related activities involving both fine and gross movements. Initially, it is noted that a magnetic resonance imaging (MRI) study of the claimant's cervical spine from May central canal stenosis despite neural foraminal narrowing. (Exhibit 28F). Moreover, while some physical examinations of record revealed the claimant had passive range of motion of the left hip without pain with some decreased sensation and a mildly antalgic gait as well as some indications of a left foot drops, other physical examinations of record performed during the same relevant time period revealed he had 5/5 muscle strength with intact sensation in his lower extremities despite an intermittently antalgic gait, an intermittently normal gait, no gross motor or sensory deficits, on ataxia or foot drag, and no tremulousness, . (Exhibits 14F/ 6; 18F/ 46; 20F/ 9-12; 21F/ 30-31; 25F; 26F/ 25, 63, 88-89, 96-97; 29F). As such, there are no diagnostic findings that meet the "B" criteria of this Listing. Moreover, regardless of whether the claimant's severe spinal impairments meet the A, B, and C criteria of this Listing, this listing is not met or medically equaled as the D criteria of this Listing is not met or medically equaled as while the claimant used some assistive devices during the relevant time period, there is no evidence of an inability to use both upper extremities to the extent that neither can be used to complete work-related activities involving both fine and gross movements, especially when considering the medical opinions of record as well as the physical examination findings, all of which are discussed below in greater detail. As such, the undersigned finds that the claimant's Cervical Radiculopathy and Lumbar Radiculitis do not, alone or in combination, meet or medically equal Listing 1.15. Likewise, these severe spinal impairments also do not meet Listing 1.16 as there is no evidence of compromise of the cauda equina.

The undersigned has considered the claimant's Peripheral Nerve Disease in relation to Impairment Listing 11.14, which involves peripheral neuropathy characterized by either: (A) disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper

extremities; OR (B) marked limitation in physical functioning, and in either understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself. Based on a review of the record, the undersigned determines that the claimant's Peripheral Nerve Disease does not, alone or in combination, meet or medically equal this Listing because this impairment does not satisfy the requisite laboratory, neurological, clinical and/ or diagnostic requirements for this Listing. Furthermore, the "B" criteria of this Listing is not met because these physical examination findings do not support a marked limitation in physical functioning, and, as discussed above for Listing 12.00, et seq., which contains "paragraph B" criteria that are identical to the "B" criteria of Listing 11.14, the claimant has no greater than a mild limitation for the four mental functioning categories, which are herein adopted for Listing 11.14B. There is no other evidence to suggest that the claimant meets this Listing. As such, the claimant's Peripheral Neuropathy Disease does not, alone or in combination, meet or medically equal Listing 11.14.

(Tr. 3000-3001).

Having made these findings, the ALJ determined that Bieri:

[H]as the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, never kneel, crouch occasionally, and never crawl. The claimant can work at unprotected heights frequently, moving mechanical parts frequently, in dust, odors, fumes and pulmonary irritants frequently, and in extreme cold frequently.

(Tr. 3001-3002).

In reaching this conclusion, the ALJ canvassed the clinical history and competing medical opinions, addressing conflicts in this evidence and making

11

determinations regarding the persuasiveness of various medical opinions. (Tr. 3002-3008). The ALJ then found at Step 4 that Bieri could not return to his past work, (Tr. 3008), but concluded at Step 5 that there was other work Bieri could undertake that existed in significant numbers in the national economy. (Tr. 3008-3009). Therefore, the ALJ, once again, denied this claim. (Id.)

This second disability appeal then followed. (Doc. 1.) On appeal, Bieri renewed his principal substantive merits argument that he was entitled to benefits as a matter of law at Step 3 of this analysis because he was *per se* disabled under the Commissioner's regulations. (Doc. 14). Bieri also emphasized a significant procedural flaw in the agency's handling of this case, arguing that, due to the confluence of events that took place at the time of his August 2022 remand hearing, he did not receive the opportunity to fully develop these legal claims as contemplated by the Court and Appeals Council when his first appeal was remanded for further consideration. (Id.)

Upon reflection, the Commissioner conceded error in the procedural handling of this August 2022 hearing and asked us to remand this case for the type of fulsome development of the record that was initially contemplated when we entered the remand order in Bieri v. Saul, 1:20-CV-983. (Doc. 17). For his part, Bieri opposes

this request and urges us to order an award of benefits in this case, arguing that the record developed and supports an award of benefits in this case as a matter of law.

This appeal is fully briefed by the parties and is, therefore, now ripe for resolution. For the reasons set forth below, while we regard this as a close case, we conclude that the Step 3 arguments advanced by Bieri—which require an exacting standard of proof—still warrant further factual development. That factual development that was contemplated by our prior remand order did not occur in this case due to a series of scheduling missteps, none of which can be attributed exclusively to any one party. Therefore, we will grant this motion to remand.

## III.    <u>Discussion</u>

### A.    <u>Legal Standards Governing Decisions to Remand or Award Benefits in Social Security Appeals.</u>

The decision before us is both narrow and important. All parties agree that the latest ALJ decision is flawed as a result of a series of events which prevented further meaningful development of the record at Bieri's second, August 2022, ALJ hearing. While this much is agreed upon by all, the parties contest what is the appropriate remedy to cure this second flawed decision by an ALJ in Bieri's case.

On this issue the parties advance contrasting positions. The Commissioner concedes error in this case but urges us to simply remand this decision for what should have transpired after the initial remand; that is, a full hearing of Bieri's claim

13

where the plaintiff could further develop and articulate his claims. For his part, Bieri urges us to eschew the opportunity to order a second remand to achieve the goals of the initial remand order and instead urges us to order an award of benefits in this case.

In considering these competing invitations regarding the course we should follow to remedy this latest, and admittedly flawed, ALJ ruling, we begin as we must with the language of the statute itself. Section 405(g) of Title 42, United States Code, defines the role of the court in reviewing Social Security disability determinations and provides that: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405 (g).

Oftentimes the remedy prescribed by the court is the relief sought here by the Commissioner: a remand for further proceedings. Such relief is specifically authorized by statute, and given the deference owed to administrative agency decisions, is often appropriate. However, as the plain language of §405(g) indicates, we are not limited to ordering a remand for further proceedings. Instead "[w]hen reversing the SSA's decision under 42 U.S.C. § 405(g), this Court 'may choose to remand to the Secretary for a further hearing or simply . . . award benefits.'

14

Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir.1984)." Brownawell v. Comm'r of

Soc. Sec., 554 F.3d 352, 357–58 (3d Cir. 2008).

 While this judgment concerning the proper form of relief in a Social Security

appeal rests in the court's sound discretion, Podedworny v. Harris, 745 F.2d 210,

221 (3d Cir. 1984), the exercise of our discretion in this field is guided by certain

basic principles. Many of these guiding principles caution that relief in the form of

an award of benefits should be employed sparingly and only when specific criteria

are met. As the court of appeals has explained:

> The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir.1982); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.1981). See Parsons v. Heckler, 739 F.2d 1334 at 1341 (8th Cir.1984); Smith v. Heckler, 735 F.2d 312, 318 (8th Cir.1984); Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 448 (8th Cir.1983); Rini v. Harris, 615 F.2d 625, 627 (5th Cir.1980); Gold v. Secretary of H.E.W., 463 F.2d 38, 44 (2d Cir.1972). When faced with such cases, it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits.

Podedworny v. Harris, 745 F.2d 210, 221–22 (3d Cir. 1984).

 Thus, in practice any decision to award benefits in lieu of ordering a remand

for further agency consideration entails the weighing of two factors: First, whether

there has been an excessive delay in the litigation of the claim which is not

attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Pounds v. Astrue, 772 F. Supp. 2d 713, 733 (W.D. Pa. 2011).

With respect to this first consideration, undue delay, courts measure this delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands. Applying these temporal benchmarks, courts have found that administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand. See e.g., Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 358 (3d Cir. 2008) (8 years delay, and 2 prior remands, benefits awarded); Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (award of benefits ordered after 10 years and two appeals); Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1162 (3d Cir. 1988) (eight years of administrative and judicial proceedings, benefits awarded); Podedworny v. Harris, 745 F.2d 210 (award of benefits after two appeals, 5 ½ years of delay); Halloran v. Berryhill, 290 F. Supp. 3d 307, 321 (M.D. Pa. 2017) (4 year delay, benefits awarded); Nance v. Barnhart, 194 F. Supp. 2d 302, 322 (D. Del. 2002) (7 years of delay in processing first appeal, benefits awarded);

Schonewolf v. Callahan, 972 F. Supp. 277, 290 (D.N.J. 1997) (6 years of delay, 2 prior remands, benefits awarded).

As for the second benchmark standard we must consider, which examines the underlying merits of the plaintiff's claim, there are two components to this merits assessment. "The district court can award benefits only when [first] the administrative record of the case has been fully developed and [second] when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits." Eberhart v. Massanari, 172 F. Supp. 2d 589, 599 (M.D. Pa. 2001) (citing Gilliland v. Heckler, 786 F.2d 178 (3d Cir.1986); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir.1982)). These requirements are met whenever the court finds the record to be "extensive and well developed." Id. Likewise these elements are satisfied if the court concludes that the medical opinion evidence in a case has been fully developed. Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 358 (3d Cir. 2008). An award of benefits is also proper when the "extensive medical record, wrongly rejected by the ALJ, is substantial evidence that [a claimant is disabled]," Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000), or when treatment records, coupled with a treating source's opinions over several years, indicates that the plaintiff is unable to maintain a normal, regular work schedule. Nance v. Barnhart, 194 F. Supp. 2d 302, 322 (D. Del. 2002).

Finally, any evaluation of whether substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits should also take into account the procedural posture of a case, and particularly which party bears the burden of proof and production on issues of disability. This can be a particularly significant consideration in a case such as this where the primary issues on appeal are whether the ALJ erred at Step 3 of his analysis when he failed to find that Bieri's impairments met all of the requirements of the pertinent listings, and thus rendered him *per se* disabled.

As to this Step 3 claim, it is well-settled that, at steps one through four the claimant bears the initial burden of proof. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Therefore, it is incumbent upon Bieri to establish that he is clearly entitled to prevail at Step 3 if he is to prevail on his claim for an award of benefits. Further, Bieri must meet an exacting burden of proof in advancing a Step 3 claim of *per se* disability as a matter of law. At Step 3 of this sequential analysis, the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, that are acknowledged as so

severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se* and is awarded benefits. 20 C.F.R. § 416.920(d); <u>Burnett</u>, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. <u>Id.</u>

These are the legal cairns, or landmarks, that guide us as we choose between the divergent paths urged upon us by the parties and write the next chapter in this case.

### B.    <u>The Motion to Remand Will Be Granted</u>

In this case we will grant the motion to remand, so that the record particularly as it relates to Bieri's claim that he is *per se* disabled may be fully evaluated. We do not reach this decision lightly. We are cognizant of the significant delay which has

occurred here. Nonetheless we cannot say with certainty both that the administrative record of the case has been fully developed and that substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. In reaching this conclusion we are guided by the legal standards defined for us by the courts.

Those standards call upon us to first evaluate whether there has been an excessive delay in the litigation of this claim which is not attributable to the claimant. On this score, we find that this case has been plagued by significant delay, triggering the need for further consideration of whether an award of benefits is appropriate. In reaching this conclusion we are mindful that courts have found administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand. See e.g., Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 358 (3d Cir. 2008) (8 years delay, and 2 prior remands, benefits awarded); Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (award of benefits ordered after 10 years and two appeals); Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1162 (3d Cir. 1988) (eight years of administrative and judicial proceedings, benefits awarded); Podedworny v. Harris, 745 F.2d 210 (award of benefits after two appeals, 5 ½ years of delay); Halloran v. Berryhill, 290 F. Supp. 3d 307, 321 (M.D. Pa. 2017) (4 year

delay, benefits awarded); <u>Nance v. Barnhart</u>, 194 F. Supp. 2d 302, 322 (D. Del. 2002) (7 years of delay in processing first appeal, benefits awarded); <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 290 (D.N.J. 1997) (6 years of delay, 2 prior remands, benefits awarded). The delays experienced here to date entail seven years and one prior remand. This delay therefore approaches or meets those previously found to have been excessive both in terms of the overall duration of this delay, and the number of instances in which the courts have been compelled to set aside flawed ALJ decisions.

Finding that the delay in this case triggers further consideration of the merits of Bieri's request for an award of benefits in lieu of a remand, we consider the next two issues we must address: Is the administrative record of the case fully developed and does substantial evidence on the record as a whole indicate that the claimant is disabled and entitled to benefits? <u>Podedworny</u> at 221–22. In examining these issues, we are mindful that "the district courts have no fact-finding role in Social Security cases." <u>Grant v. Shalala</u>, 989 F.2d 1332, 1338 (3d Cir. 1993). Rather, we must simply determine whether the factual record so fully supports an award of benefits that remand is unnecessary.

Here we find that further development of the factual record is both necessary and proper. In particular, we note that the fact-bound question of whether Bieri has

21

shown that he meets all of the requirements of the pertinent Step 3 listings which lies at the heart of this appeal calls for further consideration, development, and analysis of the record. It is also clear that this task of fully developing the record was not completed following our initial remand order due to a confluence of events involving lost scheduling notices, intractable scheduling conflicts, a belated notice to the ALJ of these conflicts, the improvident denial of counsel's request for continuance, the hasty withdrawal of Bieri's initial counsel on the eve of a hearing, and the substitution of new counsel on the day before the August 9, 2022, hearing was scheduled to take place.

No single actor bears exclusive responsibility for this series of missteps but, taken together, these mishaps denied all parties the benefit of a full hearing, the goal sought by all in our initial remand order. Further, consideration of the procedurally flawed but multi-faceted and fact-bound analysis of Bieri's Step 3 claim by the ALJ reveals a host of factual questions which still demand further illumination. Since factual development of these fact-bound issues remains manifestly necessary with respect to the question of whether Bieri can meet his burden of proof and persuasion at Step 3 that he has satisfied all listing criteria, this case will be remanded for further consideration of this issue.

However, given the delay which has occurred to date in this litigation, we believe that it is incumbent upon the Commissioner to ensure that the remand which the agency seeks is completed in an expeditious fashion. Therefore, we will direct that "the Commissioner schedule an expedited hearing . . . and promptly issue a revised decision." Diaz v. Colvin, No. 4:16-CV-00358, 2017 WL 1078229, at *1 (M.D. Pa. Mar. 22, 2017). Following this course reconciles the need for further factual development of this claim with Bieri's understandable interest in a prompt resolution of a protracted case.

## IV.    **Conclusion**

While we regard this as a close case, we conclude that the Step 3 arguments advanced by Bieri—which require an exacting standard of proof—still warrant further factual development. That factual development that was contemplated by our prior remand order did not occur in this case due to a series of scheduling missteps, none of which can be attributed exclusively to any one party. Therefore, we will grant this motion to remand.

An appropriate form of order follows.


/s/  *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: November 5, 2024

23